And Bouldin, J.
delivered the opinion of the court, that the judgement should be affirmed.* lie said—The only question in the case, is, whether the circuit court erred in refusing to allow the case to be argued ? If there be error in that refusal, it is because the party had a right to have a speech made on his behalf, whether there was a point of law, or contested fact, in the case, or not. We deem it quite clear, that in every case reasonably susceptible of argument, the expediency of a discussion ought to be left to the counsel, however hopeless the judge may think the task; but it is equally clear, that the time of the court ought not to be taken up in hearing speeches in cases like the present. It is rare indeed, that such cases occur; but when they do, it is both the right and the duty of the court, in exercising its superintending power over the proceedings in court, to control them, as was done in this case. A great proportion of the business of the circuit courts is done without argument, and is not susceptible of it; and while it is the duty of the judge, to pay due regard to the situation of counsel who are urged by their clients to make fruitless exertions, he would betray his trust, if ho carried it to a length that would clog the administration of justice.
But after this opinion was delivered, and the opinion of the court in the case of The Commonwealth v. Garth (next following this) was also announced, it was suggested from the bar, that both cases presented very interesting and important questions, worthy of much graver consideration than (perhaps) the court had bestowed upon them, and that it would be well for the court to suspend its judgement, and take full time to advise on the subject. The court said it would do *746 so, and immediately ordered both the cases to be continued; and as the plaintiff in error had retained no counsel, it requested the members of the bar, as amici curice, to assist the-court w.ilh their views of the cases.
In consequence of this request, Leigh, as amicus curice, laid before the court a written argument of this case, to the following effect.*
This is a summary proceeding under the 21st section of the statute against gaming, 1 Rev. Code, ch. 147. p. 568. And there are two objections to the regularity of the proceedings, not at all affecting the question presented by the bill .of exceptions, to which it is proper to call the attention of the court; since if they shall appear to the court, as they strike me, to be material and fatal, the court will be spared the trouble of further inquiry.
1st. The presentment is founded on the 5th section of the statute against gaming, {Ibid. p. 563.) and charges an offence strictly within the prohibition of the statute, specifying the place where, and the time within which, the of-fence , was committed—“ unlawful gaming at cards, at H. L.’s. tavern, in 'Maysville, Buckingham:” but the summons issued by, the court upon this presentment, calls the accused to appear and answer a presentment of the grand jury of the same term, “ for unlawful gaming at cards,” generally, without any specification whatever of place or time. Now, the 20th section of the statute, {Ibid. pp. 567, 8.) though it be a very comprehensive statute oijeofails in. regard to all prosecutions of the kind, only cures, and was, only intended to cure and obviate, all objections to want of precision and certainty, or to any other defect, in the presentment, indictment or information: it does not cure, nor was it designed to cure,, any defect or irregularity, any want of certainty or precision, in the process issued upon the presentment. The *747 21st section [Ibid. p. 568.) directs, that where any presentment authorized by the act, shall be made by a grand jury, the court wherein the same shall be made, shall immediately order the proper process, to bring the offender before it, with all convenient expedition”—and then proceeds to provide a course of proceeding in the last degree summary. The court shall “ order the proper process:” is that proper process, which gives the accused no notice of the place where, nor of the time within which, the offence is charged to have been committed, and contains no circumstance of specification whatever ? The only purpose of the process is to give the accused notice of the charge; such notice as may be of some use to him ; such as may give him an opportunity of defending himself; such as may enable him to make instantaneous preparation for defence. He cannot prepare for defence, he cannot summon witnesses to exculpate him from the charge, unless he be apprised in some sort (I admit no great nicety is required) of the particulars of time and place. I apprehend, that under the presentment in this case, if the prosecutor had not proved the gaming charged, at the place and within the time, specified in the presentment, though the accused had gamed at another place or at a former time, he must have been acquitted. The process issued gave the accused no opportunity to summon witnesses to prove an alibi; no opportunity even of ascertaining in his own mind, whether he was present or absent, at the place and within the time, where and when he was charged with offending against the law. The very summary nature of the proceeding directed by the statute, and the dispensing with regular pleadings, afford, to my mind, the strongest reason for requiring, that the process should indicate to the accused the offence with which he is charged, with reasonable certainty and precision—with all the certainty and precision, at the least, with which the presentment cloaths the charge—in order that he may, on the instant and without the smallest waste of time, prepare for his defence. I humbly submit, that, in the present case, *748 the process ought to have summoned the accused to answer the presentment made against him by the grand jury, “ for unlawful gaming at cards at H. L.’s tavern, in Maysville, Buckingham, within the last six months”—following the presentment in the specification of the offence; and that, in all cases of the kind, the process should, in like manner, be made to conform to and follow the presentment.
2nd. In this case, the accused being an infant, the court, at the instance of the attorney for the commonwealth, assigned him a guardian to defend him, and that guardian pleaded for him. Now, I know that in all civil suits against an infant, he can only defend by guardian, and that it is a power incident to every court of justice to appoint a guardian ad litem; 2 Wms. Saund. 117. f. note 1. 3 Bac. abr. Infancy and Age. K. p. 617. But as to criminal proceedings of whatever nature, I know of no difference between prosecutions of persons of full age and prosecutions against infants, except those substantial distinctions which turn on the question whether the infant be doli capax, and a distinction in prosecutions against infants for misdemeanours, not admissible in such prosecutions against adults, between misdemeanours of omission and those of commission; 4. Black. Comm. 22. 1. Hawk. P. C. book I. c. 1. § 3. 3. Chitt. Crim. Law, 724. I apprehend, there is no difference in the method of proceeding, in any criminal prosecution whatsoever, against infants and against adults. In cases of felony, the infant as well as the adult, we all know, must appear and plead in pérson. In cases of misdemeanour, the infant, as well as the adult, has a right to appear and defend by attorney; 1 Chitt. Crim. Law, 411. And an infant, in a criminal prosecution of any kind, may be outlawed for non-appearance, (Id. 34S.) which could not be, if the court might appoint him a guardian ad litem. The language in 1 Chitt. Crim. Law, 411. is, “Where infants are prosecuted for misdemeanours, it is the constant practice for them to appear by attorney in the crown office,though in civil cases they must defend by guardian:” the aur *749 thor cites Tidd, 92. and 2 Ld. Raym. 1284. Regina v. Tanner and others. In that case (a prosecution for a riot) the objection was, that the infant appeared by attorney, whereas it was insisted he ought to have appeared by guardian; and the court overruled the objection, because the practice and course was for infants, in such cases, to appear by attorney. The infant has a right to direct his own defence ; he is not bound to entrust it to a guardian who is above his control, instead of an attorney who is subject to his control j he is personally liable to the amercement or other punishment, and is therefore entitled to defend himself in his proper person, or by attorney, selected by his own choice.
There are also some considerations, that belong to this case, as it is presented by the bill of exceptions, and yet do not touch the general question, which (judging from what passed at the former term of this court) I suppose the circuit court intended to decide, and the exception to its opinion was perhaps intended to reserve : that general question will be stated in the sequel: what I mean to shew at present, is, that the general question, as I understood it at the former term, and as this court certainly understood it too, is not presented by the bill of exceptions, or if it may be collected from the record, it is not so presented as to justify, much more to require, a decision of it by this court.
1st. This court can only ascertain the opinion of the circuit court from the record ; no information, no explanation, from any other quarter, can be heard or regarded. And upon a critical examination of the bill of exceptions, it will bo found, that the circuit court not only refused to allow the counsel of the accused to argue the cause upon the evidence before the jury, but refused to hear any argument of the counsel addressed to the court itself: for, “ the defendant excepted to the refusal of the court to hear the argument of counsel”—upon what topic we are not informed. Now, even admitting that the court might with propriety have interdicted all argument upon the evidence before the *750 jury, under an impression, founded upon the peculiar circumstances of the case, that there was no room for fair argument; with what propriety could the judge refuse to hear argument addressed to himself? Argument, either to shew, that his impression of the evidence was erroneous, and that there was room for fair argument before the jury; or that the counsel’s desire to argue the case before the jury, was dictated by a sense of duty, and offended against no rule of decorum or principle of justice; or that, by the law, he had the absolute right to argue the case upon the evidence before the jury. If it be said, that these remarks are founded upon a misconception of the bill of exceptions; I shall be ready enough to admit, that they may be inapplicable to the case as it actually occurred in the circuit court; but they are, in truth, founded upon the loose and imperfect state of the case contained in the bill of exceptions ; and it is this imperfection only, or I should rather say, uncertainty, which I here design to point out.
2nd. Supposing that there may be a case of a criminal prosecution, in which the evidence adduced shall be all on the side of the prosecution, and the evidence shall be so clear, simple, direct, positive, unimpeachable and incontrovertible, that the court may be justified in preventing the counsel for the accused from arguing the cause upon the evidence before the jury; still, I apprehend, that in order to justify such an interdiction, to justify this court in approving a departure from the usual course of proceeding so rare, and (I may add without offence) so extraordinary, it-would not be sufficient for the court to say, in general terms, that the evidence was such, in its opinion, as to leave no room for fair argument before the jury. The evidence ought to be stated upon the record, so as to enable the appellate court to revise the course of the trial, and to judge of the propriety of denying the accused a hearing by counsel before his country; and the judge ought to take care that it is so stated, since it is his personal conduct which is in question—I say his personal conduct, only because it is im *751 possible not to perceive, that every case of the kind must be a conflict between the power of the judge and the rights, or claim of right of the counsel and the accused : I must not be understood, in the present instance, to impute any personal blame. If the judge of a circuit court may properly deny to a party accused a hearing upon the evidence before the jury, without setting forth upon the record the circumstances which justify such denial; if his own opinion, that there was no room for fair argument, expressed in general terms, shall suffice, in this appellate tribunal, to sustain a conviction where the accused has been denied a hearing before the jury; then is the judge of the circuit court cloathed with power to determine, in the last resort without appeal or supervision, in what cases a party accused is entitled to be heard by counsel in his defence, and in what cases he is not.
3rd. The judge of the circuit court who tried this cause, agreed with me, I presume, in the opinion, that he was bound to state, upon the record, the reasons which induced him to deny to this defendant, a hearing by counsel upon the evidence before the jury; for he certainly intended to assign his reasons. I pray the particular attention of this court to the reasons assigned. The bill of exceptions states, that the court would not allow any argument for the defendant before the jury, “ because there was but a single witness in the case—whom it was not attempted to impeach—whose evidence was clear and distinct as to the fact charged—and his testimony could not be varied by argument.” There was but a single witness in the case: this was doubtless stated, to evince that there was no contrariety, no complexity, no confusion in the evidence ; but when before, was it ever supposed, that the testimony of a single witness is the strongest and most impregnable ground on which a case, civil or criminal, can be rested ? It was not attempted to impeach the witness: could there be no argument before the jury against the testimony of the witness, which would not impeach him, that is (as I understand *752 the phrase) impugn his credit ? May not a witness of undoubted veracity be mistaken6} Are not numerous instances remembered, by all counsel and all judges, of the most honest witnesses being clearly proved by counsel to be mistaken, and that from a nice examination of their own testimony ? I remember a trial for murder, in which it was a very material question, whether the mortal wound was inflicted with a dirk or with a knife: a witness, who appeared to me to be above all exception, and whose veracity was not questioned, testified, in the most positive manner, that the wound was inflicted with a dirk; he said, he knew the weapon well, and he saw it: yet the counsel for the prisoner did, by force of argument, upon the very testimony of this witness, convince the court and jury, and (I believe) every bystander, and the witness (I know, for he told me so), that the fatal weapon was a knife. The evidence was clear and distinct as to the fact charged: how often has it occurred, within the experience of each and every judge of this court, that the judge has thought the evidence clear and distinct, and yet the jury has found a verdict directly contrary to the opinion of the court upon the evidence—in civil cases, in which the court has granted a new trial, because the verdict was contrary to the evidence—and in criminal cases, where if the verdict be a verdict of acquittal, the court may not grant a new trial, though the verdict be in its opinion most clearly against evidence ? The testimony of the witness could not be varied by argument—true, certainly— but the inference deducible from the testimony—the inference which it was the especial province of the jury to draw from the testimony—might have been varied by argument.
Surelyj this court cannot give its solemn sanction to any one of these reasons, singly considered. Combine them— take the language in which they are couched, in the most liberal sense—presume every thing that a court of law may possibly presume, in favor of the judgement. • If there was but a single witness in the case and therefore no complexity *753 in the evidence, if that witness was a man of indisputable veracity, and if his evidence was clear and distinct to the fact charged; was there nothing which the counsel for the accused could possibly have had to say in his behalf? does this record shew, that there was nothing which he could have said, pertinent to the case, and beneficial to his client? or that what he intended to say was impertinent? The accused was an infant: suppose it was the intention of the counsel to exhibit him in person to the jury, and submit it to them to determine, whether, considering his tender years, he was dolí cajpaoc: would not that have been proper? We are not informed by this record, what was the topic of argument on which the counsel intended to insist, or whether he indicated or was permitted to indicate it at all. Now, if it were admitted, that the court might, with strict propriety, have discountenanced a particular topic of argument, as not pertinent to the case, if. would by no means follow, that the court was right to inhibit all argument, before a single word was uttered, from which a judgement could be formed of its pertinency or its weight.
1 have said thus much, for the purpose of shewing grounds, upon which the court may decide this cause, without touching the general question which this court took up at the former term. I own I have been most anxious to find such grounds; and, if that feeling has not misled my judgement, I have found them. I am very Solicitous, that this court should avoid the general question. It is, in my humble opinion, right and wise and perfectly judicial, that the court should avoid it, if it be avoidable. As an amicus curia, as a member of the bar, as a citizen, I should be grieved to see a question of so great interest, of so much delicacy, of such real magnitude, decided in so petty a case as this is; a case so trivial, that the plaintiff in error has not thought it worth while to retain counsel le argue it for him in this court.
I shall, however, proceed to argue the general question; which l take to be this—If, in the trial of any cause, all the evidence offered to the jury be upon one side, and that evi *754 dence, in the opinion of the court, be clear, distinct and direct, and the credit of the witnesses be not impugned ; has the court a right to deny to the counsel of the party against whom such evidence is adduced, the privilege insisted on by the counsel, of arguing the question of fact in issue, upon the evidence, before the jury ?
As I understand the question, it does not concern the rights of counsel in civil cases, or in prosecutions for petty misdemeanours, only: it concerns the rights of counsel and of their clients, in the trial of the higher misdemeanours, such as perjury, conspiracy, assaults with intent to murder, rob or ravish; nay, of indictments of felony, and even of capital cases. And this court, at the former term, (unwarily I have no doubt), resolved the question in the affirmative, without making, in the opinion then delivered, any clear discrimination. It was this, indeed, that first attracted my attention to the case. I feel well persuaded, that the court, upon graver consideration, will not hesitate, if it adhere to its first resolution at all, to confine it to civil cases and to prosecutions for the lesser misdemeanours.
But the necessity of making this discrimination, does, in .effect, according to my plain sense of things, condemn the ■whole proposition. For, I apprehend, it will be impossible to find any reason of policy, much more any reason of law, why the privilege of the citizen to defend his property, upon the question of fact before the jury, against the claim of his neighbour, or an amercement at the suit of the commonwealth, should be more restricted, (in the regard in which we are now considering it), than his privilege to defend his liberty or his life in prosecutions for crime. To allow the distinction, will be to reverse the known principle of the common law, which allowed counsel to the parties in a civil action and to those who were accused of misdemeanours, and denied counsel to persons accused of felonies—counsel, JI mean, to argue the questions of fact upon the evidence before the jury. Property, if it be not as valuable, is just as sacred a right, as liberty or life. All civilized nations *755 so regard it; and the bill of rights of Virginia, particularly, ranks in the same class, and secures on the same footing, “the enjoyment of life and liberty, with the means of acquiring and possessing property, and obtaining happiness and safety.” Surely, this court will not give its sanction to a distinction between the means of acquiring and possessing, and the means of defending, property: and surely, too, the plus or minus cannot vary the principle.
Let us, however, consider the question upon the hypothesis, that the proposition is to be confined to trials of civil cases and of the lighter misdemeanours.
The power claimed for the court, is, that it may prevent the argument of the question of fact before the jury, when, in the opinion of the judge, the evidence touching the fact, is clear, distinct and conclusive. If the counsel against whose client the evidence is adduced, be of the same opinion, he will not trouble himself, the court, or the jury, with argument: it is only in cases in which the counsel differs in opinion with the court, that this conflict between the powers of the court and the rights or rather the duties of counsel, is likely to arise. We are speaking of a general principle of practice, to be applied to all counsel; and it will never do to attempt a discrimination between counsel who (in the opinion of the judge) are decorous and judicious, and counsel who are opinialive, impertinent or weak. Is it not perceived, that the question always must be, whether the evidence be clear, distinct and conclusive? and that, if the judge, having made up his mind upon that point (which it is not his province to decide), may prevent all argument before the jury upon the evidence, he denies the only means of shewing either to them or to himself, that the evidence is not clear, distinct and conclusive ? The claim to exercise such an authority, must always proceed upon a petitio prinápii. I repeat, that juries often differ with the court, and sometimes repeated juries differ with the court, upon questions of fact, depending upon evidence which the court thinks plain and irresistible; and every judge must remem *756 ber many instances, in which doubts and difficulties, and insurmountable objections to the sufficiency of evidence, have been developed by the argument of counsel, that did not occur to him at the first impression.
How is it possible for a judge to determine, whether any argument before the jury can be proper and pertinent, or must be idle and useless, without hearing the argument?
It must be admitted, on all hands, that a party to a civil action or to a prosecution for misdemeanour, has a strict right to a trial by a jury of his country, of every question of fact, upon which his rights, his liabilities, or his guilt, may depend: neither, I presume, will it be denied, that, generally speaking, he has a right to demand a hearing by counsel before the jury upon the evidence. The true question is, whether this be an absolute right, which he may claim eso debito justitice, like his right to common process, or his right to trial by jury ? Or, does the exercise of the privilege depend on the mere permission of the court ? Or, is the claim of the privilege to be addressed to the sound discretion of the court? If it depend on the mere permission or allowance of the court; then, it ceases to be a right or privilege in any sense; and it may be lawfully withheld, in cases of the most complicated, contradictory, and doubtful evidence, as well as in the simplest and plainest. If it be addressed to the sound discretion of the court; then, as in all other cases addressed to the discretion of the court, either party may except for an injudicious exercise of such discretion; and I do not see, why one party may not object to the allowance of an argument before the jury, where he thinks there ought to be none, just as reasonably as the other party may object to the inhibition of argument, where he thinks it ought to be allowed. It must be so, unless the sound discretion in such cases, is a sound discretion sui generis; Exceptions may be taken on either side—-the circumstances spread upon the record—appeals or writs of error prosecuted. How is an appellate court to review the judgement of a circu.it court upon any such point ? The *757 words of the witnesses may, indeed, be spread upon the record—but their characters for intelligence and integrity, for retentiveness or fallacy of memory, their temper towards the parties, their manner, and all the circumstances that affect the weight of viva voce testimony, cannot be spread upon the record. Add to this consideration, the known principle of presumption, that the judgement of an inferiour court is right unless the contrary appear ; and, then, I think, it will be plain enough, that this discretionary power claimed for the court, to interdict argument upon the evidence before the jury, will amount, very nearly, to an absolute arbitrary power, subject to no control, review or correction.
I admit, without hesitation, the general superintending control of a judge presiding at a nisi prim trial; but that authority cannot extend to the denial of any right or privilege given by law, or to the alteration of any settled rule or principle of practice.
As to the convenience of a power in the judge to put a stop to idle and useless argument before the jury; I venture to affirm, that, if the power be conceded to the judges, and be exercised by them in every case in which they shall conscienciously think its exercise proper, more time of the circuit courts will be wasted in altercations between the bench and bar, worse than idle, and more of the time of the appellate courts, in reviewing the exercise of the power, than can possibly be consumed by the utmost prolixity, pertinacity and obstinacy of counsel; and more vexation to the courts, to the bar and to the suitors, will Sow from it, than from any principle of practice that the contempt of old and approved usages (ever fruitful of mischief) could devise.
The dignity of a court of justice is part of its authority, which it is bound, by its duty to the public, carefully to preserve. Altercations between the bench and the bar, do indeed tend to "degrade the bar, and to expose it to contempt; but they also tend, and that hardly in a less degree, to detract from the dignity of the court. Respect and delicacy towards the bar, will not fail to conciliate and to command *758 the respect and veneration, which are certainly due from it towards the bench. In the feelings of the counsel, the feelings of their clients, in other words, of all the suitors in the court, will be sure to participate and unite. I implore the court to close the door to all such altercations between judges and counsel. These sentiments are dictated by a yet more anxious concern for the authority and dignity of the judges, than for the rights of counsel.
It is hardly necessary to add, that I am very far from believing, that, in the case now' before the court, any actual oppression was intended; and I trust that nothing I have said will have the least colour of disrespect or want of confidence.
The attorney general told the court, that he had thought it his duty to consider, carefully and impartially, the question presented by the bill of exceptions; and he thought it his duty also to say, that he was clearly of the opinion, that the judgement of the circuit court on that point, was erroneous.
The case stood over until the present term, when almost all the judges of the court being present, the court took it up for consideration.
Scott, J. delivered the judgement.
The first error complained of, is, that the summons called the accused to answer a presentment of the grand jury “ for unlawful gaming at cards,” generally, without specification of time or place: and in support of this objection, it was insisted, that the 21st section of the statute against gaming cures defects in presentments, indictments or informations, for the offence, but does not extend to any irregularity or want of precision in the process. The court is of opinion, that there is nothing in this objection. The object of the summons is to give the party notice, that he'is prosecuted for an offence of a particular character, and to apprise him of the time when and the place where he must appear and make his defence. The detail of the particular facts charged *759 with the accompanying circumstances of time and place is supplied by the presentment.*
The next error alleged is, that, the defendant being an infant, the court, on the motion of the attorney for the commonwealth, assigned him a guardian to defend him, and that guardian pleaded for him. This objection the court thinks fatal. Criminal proceedings against infants, ought, in all cases, to be conducted in the same manner as against persons of full age. The defendant, in this case, had a right to appear in person, or by attorney of his own selection; and the circuit court erred in assigning him a guardian, and trying his case on a plea put in by the guardian.†
The bill of exceptions presents a question of much interest ; and although the case might be disposed of without a decision of it, yet as there is a very full court, it is thought best, by a majority of the judges, now to decide it. The question is, Whether, in a criminal case, on the trial of a question of fact before the jury, where the evidence is all on the side of the commonwealth, and is unimpeached, and the court is of opinion, that it is clear and distinct as to the fact charged, and cannot be varied by argument of counsel, it may, in its discretion, prevent the counsel of the accused from arguing the question of fact before the jury ?
It is the right of every party accused to be heard by counsel on his whole case. The credibility of the evidence, is not only a material, but the most if not the only material part of every case which depends on a question of fact. Of this credibility the jury alone are the judges; and they may form their opinions, not only on the characters of the witnesses as persons of truth, but on their manner of giving testimony, their relation to the parties, their opportunities of being correctly informed, and on a variety of other circumstances which may be calculated to affect their judgement. Therefore, the right of the accused to be heard on his whole *760 case, involves directly the right to he heard on the credibility of the evidence against him. The fact that the evidence is direct to the point in issue, and must establish that point or not, according as the evidence is credible or not, even though coupled with the fact that there is no direct evidence to impeach its credit, does not alter the principle, or present a case to which the principle cannot apply. The only question may be, whether the evidence is credible or not; yet that question may be decided, as above stated, from a variety of circumstances attending the case, other than conflicting testimony, which circumstances the jury alone are to weigh. To deny to the party, therefore, the right to be heard in a case of this kind, is, in effect, to deny him all right of defence whatsoever. It is not for the court to say, beforehand, to what point the counsel means to direct his argument. If there be any point involved in the issue before the jury, on which their minds may be enlightened or their consciences satisfied by argument, the accused has an undoubted right to all the advantage that may be derived from that source; and this right would be utterly destroyed, if it were allowed to the court to prohibit argument, merely because, in its opinion, the evidence is so clear that argument cannot vary it. Neither is this the only case in which an argument before the jury might be of importance to the accused, however direct and uncontradicted the evidence against him might be. We deem it unnecessary, however, to enter more at large into an investigation of the subject, since we have no difficulty in deciding, upon the single view of it above presented, that the court had no right to inhibit argument in the case before us. But while we thus decide, we are not to be understood as restricting, in any degree, the power of the court to prevent an abuse of this or any other right, by exercising a proper control over the course of the argument.*
The judgement of the circuit court is to be reversed, all proceedings subsequent to the summons set aside, and the cause remanded for further proceedings.

 In this opinion, judges Daniel, Allen, Dade, Johnston, Summers and Bouldin, concurred; judges Broclmibrough, Semple, Saunders and Field, dissented.

 The argument of this case (as well as that of the same counsel in the next following case of The Commonwealth v. Garth) is reported at large (with some trivial alterations) by the particular desire and direction of the court.

 On this point,the court was unanimous; but Lomax and Fry, J. were not present at the resolution of it.

 On this point, the court was also unanimous; but W. Browne, Fry, and R. B. Taylor, 3. were not present at the resolution of it

 On this point, Summers, J. dissented.